**EDWARD J. NEVIN, State Bar No. 41226**
**NEVIN & ABSOLOM**
22 Battery Street, Suite 333
San Francisco, California  94111
Tel:      (415) 392-5040
Fax:      (415) 392-3729
E-Mail:  ed.nevin@333law.com

**DAVID E. WOOD, State Bar No. 121170**
**JEFFREY A. KIBURTZ, State Bar No. 228127**
**WOOD & BENDER LLP**
864 E. Santa Clara Street
San Buenaventura, California  93001
Tel:      (805) 288-1300
Fax:      (805) 288-1301
E-Mail: dew@wood-bender.com
           jak@wood-bender.com

Attorneys for Plaintiff **JAMES M. CADY**
On Behalf Of Himself And All Others
Similarly Situated

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES M. CADY, an Individual, on Behalf of Himself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY, et al., <br><br> Defendants. | Case No.: 4:08-CV-02753-CW <br> Assigned to: Hon. Claudia Wilken <br> Courtroom 2 <br><br> Action Filed:   June 2, 2008 <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO CHANGE TIME** |

///

///

///

75322v1

4:08-cv-02753 CW

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO CHANGE TIME**

WOOD | BENDER LLP
864 E. Santa Clara Street | San Buenaventura | CA 93001     805-288-1300   fax: 805-288-1301   www.wood-bender.com

WOOD|BENDER LLP

864 E. Santa Clara Street | San Buenaventura | CA 93001    805-288-1300   fax: 805-288-1301   www.wood-bender.com

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO CHANGE TIME**

Plaintiff James M. Cady, on behalf of himself and others similarly situated ("Plaintiff"), hereby opposes the Notice of Motion to Change Time filed on August 21, 2008 by Defendant Blue Cross health plans.  This is a multi-defendant common practice lawsuit involving the uniform practice of 39 Blue Cross & Blue Shield health insurers to decline coverage for a treatment of certain pulmonary tumors called Radio Frequency Ablation ("RFA").  RFA is a non-invasive treatment performed on an out-patient basis that is covered under most health insurance policies (including some Blue Cross plans, which were either not sued or have already been dismissed from this litigation).  Mr. Cady seeks relief under the Employment Retirement Income Security Act of 1974 ("ERISA") for himself and similarly situated members of Blue Cross plans whose claims for RFA treatment have been wrongly denied.

Defendants have filed two separate motions to dismiss the complaint.  Those motions are scheduled to be heard on September 25, 2008.  Defendants contend, as their primary argument, that this case cannot proceed against 38 of the 39 defendants because the only named plaintiff at this time, Mr. Cady, is not a participant in those particular plans.  Plaintiffs will demonstrate that this is inaccurate:  there is sufficient commonality among the Blue Cross plans to give Mr. Cady standing to assert the collective claims of pulmonary cancer patients denied Blue Cross coverage for RFA nationwide, even though he is a member of the California plan alone.  Yet standing, and the factual and legal issues surrounding it, are – as summarized below –far more complex than Defendants' motions suggest.  Nonetheless, by their motion filed August 21, 2008, Defendants assume the correctness of their legal arguments, asserting that discovery required under Rule 26 of the Federal Rules of Civil Procedure would in effect be futile.  This is inaccurate, and the instant motion must be denied.

**ARGUMENT**

1.    **Defendants Article III Standing Argument Raises Fact Issues On Which Discovery Should Be Taken**.

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO CHANGE TIME**

WOOD | BENDER LLP

864 E. Santa Clara Street | San Buenaventura | CA 93001    805-288-1300   fax: 805-288-1301   www.wood-bender.com

1    As indicated by Defendants' well-briefed motions to dismiss, there is plenty of support

2 for the argument that, for standing under the Article III of the United States Constitution

3 ("Article III") to exist, there must be at least one named plaintiff for every named defendant.

4 While this appears to be the developing law in securities cases or employment cases, it is not the

5 law in ERISA cases.  Under ERISA, "***an individual in one ERISA benefit plan can represent a***

6 ***class of participants in numerous plans other than his own, if the gravamen of the plaintiff's***

7 ***challenge is to the general practices which affect all of the plans***."  Buus v. WaMu Pension

8 Plan, 2007 U.S.Dist.LEXIS 95729, * (W.D. Wash., December 18, 2007) *quoting* Fallick v.

9 Nationwide Mut. Ins. Co., 162 F.3d 410, 422 (6th Cir. 1998) *see also* Davis v. Bailey, 2005

10 U.S.Dist.LEXIS 38204, *6-7 (D. Colo., December 22, 2005); Alves v. Harvard Pilgrim Health

11 Care, Inc., 204 F.Supp.2d 198, 205 (D. Mass. 2002).

12    In addition to the ERISA context, courts have concluded that multi-defendant common

13 practice lawsuits are constitutionally permissible.  Indeed, in a case relied on heavily by

14 Defendants, In re Eaton Vance Corp. Secs. Litig., 220 F.R.D. 162, 168 (S.D.N.Y. 2004), the

15 court found that there "may well be instances when it is necessary to create exceptions to the

16 general rule that Article III standing should be addressed before other issues."  Id. at 168.  These

17 cases include ERISA cases (Fallick, *supra*, 162 F.3d at 422), civil rights litigation (Wilder v.

18 Bernstein, 499 F.Supp. 980, 993 (S.D.N.Y. 1980)), asbestos cases (Ortiz v. Fibreboard Corp.,

19 527 U.S. 815, 831 (1999)), and common practices engaged in by numerous, related defendants

20 (Payton v. County of Kane, 308 F.3d 673, 680 (7th Cir. 2002)).  In each, the court considered

21 Article III standing issues in conjunction with, or in the context of, class certification issues

22 under Rule 23 of the Federal Rules of Civil Procedure.  For example, in Payton, *supra*, the

23 Seventh Circuit Court of Appeals held as follows:

24    We come therefore to the central issue in this case, which is whether these named
     plaintiffs may represent a class that includes people from the other 17 named
25    counties. We have begun our analysis with the question of class certification,
     mindful of the Supreme Court's directive to consider issues of class certification
26    prior to issues of standing. See Ortiz v. Fibreboard Corp., 527 U.S. 815, 831
     (1999): "the class certification issues are . . . logically antecedent to Article III
27    concerns, and themselves pertain to statutory standing, which may properly be
     treated before Article III standing.  Thus the issue about Rule 23 certification

28

75322v1                                                    - 2 -                          4:08-cv-02753 CW

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO CHANGE TIME**

should be treated first." Id. at 831. (citations omitted).  This involves defining the class and assessing whether the proposed class representatives can satisfy all four requirements of Rule 23(a), and at least one of the categories of Rule 23(b). Because the district court never undertook this inquiry, it would be premature for this court to do so without a proper record.

Payton, *supra*, 308 F.3d at 680.

In their motions to dismiss Defendants do not even acknowledge, let alone distinguish, this large body of conflicting law.  Although Plaintiffs are confident that Article III standing exists in this case, Plaintiffs are mindful that this is a complex issue.  Indeed, in a recent article in the California Law Review concerning standing issues in multi-defendant common practice litigation, the authors concluded as follows:

> The multi-defendant common practice lawsuit is a fairly rare phenomenon in contemporary litigation, perhaps because of the seeming rigidity of the injury-in-fact test and its application to some common practice suits.  Nonetheless, as a mode of litigation, it offers significant advantages for the efficacious enforcement of various regulatory regimes.  The case law dealing with multi-defendant lawsuits, with respect to both standing and class certification issues, is scattered, confused, and in much need of higher court guidance.  . . . .

*How Many Injuries Does It Take? Article III Standing in the Class Action Context,* 95 Calif. L. Rev. 849, 883 (2007).

Given the degree to which courts have struggled with Article III standing issues and the interrelationship with class certification issues under Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs respectfully submit that the parties should – rather than stay all discovery, as proposed by Defendants – engage in a narrow scope of discovery to isolate and clarify the facts pertinent to these difficult legal issues.  Oppenheimer Fund v. Sanders, 437 U.S. 340, 351 (1978) [Rule 26 is sufficiently broad to permit discovery of facts related to preliminary jurisdictional matters].  The specific factual issues on which Plaintiffs believe discovery is appropriate at this time are (1) whether Defendants have declined claims of persons capable of serving as named plaintiffs, such that the Article III standing issue would become moot; and (2) the degree to which the Defendant plans have centralized management of claims policies and decisions, such that standing should be analyzed under the Payton and Fallick line of cases.  This is, of course, a much narrower scope of discovery than that mandated under Rule 26.

WOOD | BENDER LLP

864 E. Santa Clara Street | San Buenaventura | CA 93001   805-288-1300   fax: 805-288-1301   www.wood-bender.com

75322v1

- 3 -                                            4:08-cv-02753 CW

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO CHANGE TIME**

**2.      Plaintiffs' Proposal For A Narrow Discovery Plan.**

Plaintiffs proposed during a conference call on August 21, 2008 that the parties stipulate

to a proposed stay of motion practice and engage in a very narrow scope of discovery to

ascertain the factual underpinnings of this Court's subject matter jurisdiction.  Declaration of

Jeffrey A. Kiburtz ("Kiburtz Decl."), ¶ 2.  The preliminary discovery plan proposed by Plaintiffs

was confirmed in an August 22, 2008 email, which provided as follows:

> 1)  Each defendant would perform searches of its respective claims database for
> claims submitted under CPT Code 32998 (specific to RFA treatment of pulmonary
> tumors) or CPT Code 32999 (unlisted procedure lungs and pleura) for the past five
> years.  Defendants would be dismissed if they certified pursuant to this process
> that they cover RFA treatment for pulmonary tumors ***and*** had not in the past 5
> years declined any claims for such treatment on the grounds that such treatment
> was experimental, investigational or not medically necessary.  . . . .
>
> 2)  Defendants that had declined coverage for RFA treatment of pulmonary tumors
> on grounds that such treatment was investigational, experimental or not medically
> necessary would contact -- under court supervision, pursuant to a notice letter
> agreed upon by the parties -- all claimants whose claims had been declined.  The
> notice letter would advise the claimants of this litigation, their potential right to
> serve as named plaintiffs, and provide contact information for plaintiffs counsel.  .
> . . .  Any such claimants who wished to serve as named plaintiffs in this litigation
> could contact plaintiffs counsel to be potentially added as named plaintiffs.  . . . .
> At the end of the [105 day to 150 day notice] period, any defendants for which
> there was no named plaintiff would be dismissed and the litigation would proceed
> with respect to the remaining defendants.
>
> 3)  Defendants would provide information about their specific status as claims
> administrators and the degree to which policy decisions between and among the
> Blue Cross plans are centralized.

Kiburtz Decl., ¶ 3; Exhibit A.

**3.      Plaintiffs' Proposed Discovery Is Not Burdensome And Promotes Judicial Economy.**

Defendants objected to the proposal outlined above, arguing that determining whether

any claims had been declined under the above-referenced CPT codes was unduly burdensome.

Kiburtz Decl., ¶ 4; Exhibit B.  Contrary to this claim of undue burden, Blue Cross of Arizona

and Independence Blue Cross (both of which have been dismissed from this litigation) searched

their records for the two CPT codes, confirmed that no claims had been denied, and were

promptly dismissed.  Kiburtz Decl., ¶¶ 5 and 6; Exhibits C and D.  With respect to Independence

75322v1                                                          - 4 -                                         4:08-cv-02753 CW

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO CHANGE TIME**

WOOD | BENDER LLP

864 E. Santa Clara Street | San Buenaventura | CA 93001   805-288-1300   fax: 805-288-1301   www.wood-bender.com

Blue Cross, Plaintiffs requested the CPT code search at 12:08 P.M. (PST) on August 6, 2008 and were provided with a letter confirming the results less than 24 hours later, at 10:49 A.M. (PST) on August 7, 2008.  Kiburtz Decl., ¶ 6; Exhibits E and F.  Defendants have submitted no admissible evidence to the contrary, but only counsel's statement on "information and belief" that the process would take "as little as approximately five hours or as much as hundreds of hours."  Kiburtz Decl., ¶ 4; Exhibit B.  Counsel has based this estimate on, among other things, averred difficulties concerning the CPT codes under which RFA treatment might have been submitted.  Id.  This, however, is not a valid issue, as Plaintiffs have requested that only two CPT codes (32998 and 32999) be searched at this time.  Kiburtz Decl., ¶ 3; Exhibit A.  Defendants' claims of undue expense and burden are vastly overstated.

Further, the plan proffered by Plaintiffs promotes judicial economy.  Initially, it helps minimize the likelihood that this Court will need to decide the Article III standing constitutional issue. *See, e.g.,* Ashwander v. T.V.A., 297 U.S. 288, 347 (1936) [federal courts should generally avoid making decisions based on the United States Constitution when possible].  If, in the future, the constitutional issue needs to be reached, the factual record on which that decision will be made will be better developed under the plan proposed by Plaintiffs.  Moreover, the plan proffered by Plaintiffs will minimize the chance of an appeal following a decision on Defendants' motions to dismiss.  Or, again, provide a better record from which the appeal would be taken.

## CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that this Court deny Defendants' Motion to Change Time.

**Dated: August 25, 2008**              **WOOD & BENDER LLP**

                                                 **/s/ David E. Wood**
                                        **By**_____
                                              **DAVID E. WOOD**
                                              **JEFFREY A. KIBURTZ**
                                        Attorneys for Plaintiff **JAMES M. CADY**
                                        On Behalf Of Himself And All Others
                                        Similarly Situated

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO CHANGE TIME**

WOOD | BENDER LLP
864 E. Santa Clara Street | San Buenaventura | CA 93001    805-288-1300    fax: 805-288-1301    www.wood-bender.com