**EDWARD J. NEVIN, State Bar No. 41226**
**NEVIN & ABSOLOM**
22 Battery Street, Suite 333
San Francisco, California  94111
Tel:      (415) 392-5040
Fax:      (415) 392-3729
E-Mail:  ed.nevin@333law.com

**DAVID E. WOOD, State Bar No. 121170**
**JEFFREY A. KIBURTZ, State Bar No. 228127**
**WOOD & BENDER LLP**
864 E. Santa Clara Street
San Buenaventura, California  93001
Tel:      (805) 288-1300
Fax:      (805) 288-1301
E-Mail: dew@wood-bender.com
            jak@wood-bender.com

Attorneys for Plaintiff **JAMES M. CADY**
On Behalf Of Himself And All Others
Similarly Situated

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES M. CADY, an Individual, on Behalf of Himself and All Others Similarly Situated,<br><br>　　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY, et al.,<br><br>　　　　　　　　　Defendants. | Case No.: 4:08-CV-02753-CW<br><br>DATE: September 25, 2008<br>TIME:  2:00 p.m.<br>DEPT.: Courtroom 2, 4th Floor<br><br>JUDGE: Honorable Claudia Wilken<br><br>**PLAINTIFF'S OPPOSITION TO MOTION OF CERTAIN DEFENDANTS TO DISMISS PLAINTIFF'S COMPLAINT**<br>*[CROWELL GROUP]* |

///

///

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION TO CROWELL GROUP'S MOTION TO DISMISS

## I.   INTRODUCTION

This is a multi-defendant common practice lawsuit involving the uniform practice of 39 Blue Cross & Blue Shield health insurers to decline coverage for a treatment of certain pulmonary tumors called Radiofrequency Ablation ("RFA"). RFA is a non-invasive treatment performed on an out-patient basis that is covered under most health insurance policies (including some Blue Cross plans, which were either not sued or have already been dismissed from this litigation). Mr. Cady seeks relief under ERISA for himself and similarly situated members of Blue Cross plans whose claims for RFA treatment have been wrongly denied.

Multiple Defendants[1] (hereinafter referred to as "Crowell Group") filed a motion to dismiss, asserting that the case cannot proceed. As discussed below, the Crowell Group's motion should be denied because (1) Defendants disregard established law providing that a plaintiff (such as Plaintiff here) can sue multiple health insurance plans under the Employment Retirement Income Security Act of 1974 ("ERISA") when the "gravamen of the plaintiff's challenge is to the general practices which affect all of the plans."; and (2) Defendants elevate form over substance by disregarding the plain allegations that Plaintiff contends that all defendants wrongfully decline claims for RFA treatment of specific types of pulmonary tumors, instead averring that Plaintiff's allegations are insufficient to place Defendants on notice of what they did wrong.

Plaintiff is a member of a plan administered by ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY ("California Plan"), but not plans administered by the other Defendants. The Crowell Group does not include the California Plan, and argues that all

---

[1]// BLUE CROSS OF IDAHO HEALTH SERVICE, INC., BLUE CROSS AND BLUE SHIELD OF KANSAS CITY, BLUE CROSS AND BLUE SHIELD OF NEBRASKA, HEALTHNOW NEW YORK, INC. (d/b/a/ BLUECROSS BLUESHIELD OF WESTERN NEW YORK and BLUESHIELD OF NORTHEASTERN NEW YORK), BLUE CROSS BLUE SHIELD OF NORTH DAKOTA, and BLUECROSS BLUESHIELD OF WYOMING

75648v2

1                                                                                           4:08-cv-02753 CW
**OPPOSITION TO MOTION OF CROWELL GROUP DEFENDANTS TO DISMISS PLAINTIFF'S COMPLAINT**

Defendants therein should be dismissed because Plaintiff lacks standing under Article III of the United States Constitution and ERISA to sue plans of which he was not a member. Defendants, in making this argument, fail to address, discuss or – much less – distinguish the large body of law that permits plaintiffs under ERISA to sue plans other than their own when the "gravamen of the plaintiff's challenge is to the general practices which affect all of the plans."[2]

The Crowell Group defendants also argue that all Defendants should be dismissed because Plaintiff alleged only that the Defendants "administered" the plans, not that Defendants are the "administrators" of the plans. The distinction the Crowell Group intends to make here is neither supported in the case law nor relevant to the issues before the court. The Crowell Group also argues that all Defendants should be dismissed because the class claims are too general with respect to all Defendants to meet general pleading standards and class certification standards of Rule 23 of the Federal Rules of Civil Procedure ("FRCP"). Not only does this directly contradict the Crowell Group's argument that Article III standing issues should be decidedly independently of, and not in conjunction with, class certification issues under Rule 23 of the FRCP, it disregards the nature of Plaintiff's allegations that ***all*** Defendants wrongfully decline coverage for RFA treatment of certain types of pulmonary tumors. Defendants' averred ignorance concerning what, specifically, Plaintiff contends they did wrong is pretextual in nature, and intended to avoid litigation on the merits.

## II.  FACTUAL BACKGROUND

Plaintiff has brought this putative class action against Defendants to seek relief for the declination of coverage for RFA for certain types of pulmonary cancers in patients for whom surgery is not a viable option. Plaintiff alleges that all Defendants, per the terms of the plans they administer, generally agree to cover the cost of pulmonary cancer treatment, but exclude from coverage "[s]ervices or supplies that are not medically necessary, as defined." Complaint

---

2// Buus v. WaMu Pension Plan, 2007 U.S.Dist.LEXIS 95729, * (W.D. Wash., December 18, 2007) *quoting* Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 422 (6th Cir. 1998) *see also* Davis v. Bailey, 2005 U.S.Dist.LEXIS 38204, *6-7 (D. Colo., December 22, 2005); Alves v. Harvard Pilgrim Health Care, Inc., 204 F.Supp.2d 198, 205 (D. Mass. 2002).

75648v2

2   4:08-cv-02753 CW
**OPPOSITION TO MOTION OF CROWELL GROUP DEFENDANTS TO DISMISS PLAINTIFF'S COMPLAINT**

¶ 51. Notwithstanding this agreement to cover the cost of pulmonary cancer treatment, all Defendants refuse to cover RFA therapy for sarcoma metastic to the lung. Complaint ¶54.

RFA is a means of treating pulmonary cancer patients who are not surgical candidates due to the size or nature of their tumors. Complaint ¶55. The procedure is far less invasive than any conventional therapy for these cancers, including surgery, radiation therapy, and chemotherapy. Id. It is performed on an outpatient basis under general anesthesia or conscious sedation. Id. The energy at the needle tip causes ionic agitation and frictional heat in the surrounding tissue, which, when hot enough, leads to cell death and coagulation necrosis. Id. Most patients feel little or no pain during the procedure and go home the same day or the day after the procedures, usually with no pain or soreness. Id. Rather than pay for this, Defendants require their insureds to suffer the pain of pulmonary tumors or undergo expensive and invasive surgery (when that is even an option).

Defendants' medical policy with respect to RFA treatment of pulmonary tumors is that they will "not provide coverage for radiofrequency ablation of pulmonary tumors . . . [because RFA] is considered investigational." Complaint ¶56. In accordance with this medical policy, Plaintiff alleges that all Defendants decline coverage for RFA treatment of pulmonary tumors. Complaint ¶¶57-58. Defendants' action in this regard is inconsistent with the health insurance industry as a whole, as most major health insurers recognize as medically sound the use of RFA treatment for pulmonary tumors. Complaint ¶59.

**III. ARGUMENT**

    **A. Plaintiff Has Standing To Assert Claims Against Defendants Not In Privity With Him.**

        **1. Article III Standing Exists With Respect To All Defendants.**

Defendants claim that Plaintiff lacks standing under Article III of the Constitution because "he does not allege any causal connection between his alleged injury and Moving Defendants' alleged conduct." This assertion misconstrues case law concerning ERISA claims, which does not require that the Plaintiff even belong to all of the plans involved in the suit.

"Once a potential ERISA class representative establishes his individual standing to sue his own ERISA-governed plan, there is *no additional constitutional standing requirement* related to his suitability to represent the putative class of members of other plans to which he does not belong." Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 424 (6th Cir. 1998) (emphasis added). This is because the "standing-related provisions of ERISA were not intended to limit a claimant's right to proceed under *Rule 23* on behalf of all individuals affected by the challenged conduct, regardless of the representative's lack of participation in all the ERISA-governed plans involved." Id. at 423.[3] When a plaintiff has standing to sue his own ERISA-governed plan, he may "represent a class of participants in numerous plans other than his own, if the gravamen of the plaintiff's challenge is to the general practices which affect all of the plans." Buus v. WaMu Pension Plan, 2007 U.S.Dist.LEXIS 95729, * (W.D. Wash., December 18, 2007) *quoting* Fallick, *supra*, 162 F.3d at 422; *see also* Davis v. Bailey, 2005 U.S.Dist.LEXIS 38204, *6-7 (D. Colo., December 22, 2005); Alves v. Harvard Pilgrim Health Care, Inc., 204 F.Supp.2d 198, 205 (D. Mass. 2002).

Here, it is not disputed that Plaintiff has Article III standing to sue the California Plan. Therefore, by operation of the foregoing cases, Plaintiff has Article III standing to assert on behalf of a putative class claims against *all* Defendants.

In addition to the ERISA context, courts have concluded that multi-defendant common practice lawsuits are constitutionally permissible. For example, in In re Eaton Vance Corp. Secs. Litig., 220 F.R.D. 162, 168 (S.D.N.Y. 2004), the court found that there "may well be instances when it is necessary to create exceptions to the general rule that Article III standing should be addressed before other issues." Id. at 168. These cases include ERISA cases (Fallick, *supra*, 162 F.3d at 422), civil rights litigation (Wilder v. Bernstein, 499 F.Supp. 980, 993 (S.D.N.Y.

---

[3] A Seventh Circuit court and two district courts have noted that ERISA does not require an "unduly cramped reading to those provisions granting standing to certain classes of persons under the Act." Sladek v. Bell System Management Pension Plan, 880 F.2d 927, 976 (7th Cir. 1989); In re Eaton Vance Corp. Secs. Litig., 220 F.R.D. 162, 168 (S.D.N.Y. 2004); John Doe I v. Guardian Life Ins. Co. of America, 145 F.R.D. 466, 472 (N.D. Ill. 1992).

1980)), asbestos cases (Ortiz v. Fibreboard Corp., 527 U.S. 815, 831 (1999)), and common practices engaged in by numerous, related defendants (Payton v. County of Kane, 308 F.3d 673, 680 (7th Cir. 2002)).  In each, the court considered Article III standing issues in conjunction with, or in the context of, class certification issues under Rule 23 of the Federal Rules of Civil Procedure.  For example, in Payton, *supra*, the Seventh Circuit Court of Appeals held as follows:

> We come therefore to the central issue in this case, which is whether these named plaintiffs may represent a class that includes people from the other 17 named counties. We have begun our analysis with the question of class certification, mindful of the Supreme Court's directive to consider issues of class certification prior to issues of standing. See Ortiz v. Fibreboard Corp., 527 U.S. 815, 831 (1999): "the class certification issues are . . . logically antecedent to Article III concerns, and themselves pertain to statutory standing, which may properly be treated before Article III standing.  Thus the issue about Rule 23 certification should be treated first." Id. at 831. (citations omitted).  This involves defining the class and assessing whether the proposed class representatives can satisfy all four requirements of Rule 23(a), and at least one of the categories of Rule 23(b). Because the district court never undertook this inquiry, it would be premature for this court to do so without a proper record.

Payton, *supra*, 308 F.3d at 680.

Defendants' argument that multi-defendant common practice cases such as this must always be dismissed is contrary to well-established law.

### 2.    Standing Under ERISA Exists With Respect To All Defendants.

Defendants' also contend that Plaintiff does not have standing under ERISA to pursue claims against plans other than the California Plan.  Specifically, Defendants effectively argue that an ERISA plaintiff cannot maintain an action against any plan under which he is neither a beneficiary nor participant and through which he has no fiduciary relationship.  This is, as indicated above, in sharp contrast to ERISA law (which Defendants ignored in their moving papers).  Indeed, the principal case relied on by Defendants for this proposition, Curtis v. Nevada Bonding Corp., 53 F.3d 1023, 1026 (9th Cir. 1995), is inapposite.  In Curtis, insurers sought to move a state law claim into federal court under an ERISA preemption argument.  Id. at 1024.  However, the insured in that case had never been a member of an employer's health plan such that ERISA would apply.  Id.  On these facts, the court held that, when plaintiffs lack subject

matter jurisdiction in federal court, ERISA may not preempt their state law claims. Id. at 1026. Curtis does not address the manner in which standing, or subject matter jurisdiction in general, is reached.

### B. Plaintiff's Claim Meets The *Everhart* Requirements Where Applicable.

Defendants argue that Plaintiff's Complaint should be dismissed in its entirety because he has failed to allege that any of the Defendants are "plans" or "plan administrators." In support of their argument, Defendants point to Everhart v. Allmerica Fin. Life Ins. Co., 275 F.3d 751 (9th Cir. 2001) to emphasize that "the only proper defendant in a claim for benefits under § 1132(a)(1)(B) is the plan as an entity or the plan administrator." However, Plaintiff's Complaint is not in conflict with this holding. In his Complaint, Plaintiff clearly states that Anthem "insured *and* administered" the California Plan, while his employer merely "sponsored" it. So long as Anthem administers *both* the plan and claims made against it, Anthem is a "plan administrator" under Everhart and consequently is an appropriate defendant in this action.

Defendants' use of Everhart in challenging Plaintiff's action against the remaining Defendants is equally inapposite. Both Everhart and a similar case, Ford v. MCI Communications Corporation Health & Welfare Plan, 3999 F.3d 1076, 1081 (9th Cir. 2005), involve circumstances in which the identity of the plan administrator was either specified in the plan or conceded by the parties. As a result, by process of elimination the court could readily reject the contention that any other entities – including one which effectively administered the plan – could serve as the plan administrator. Ford, *supra*, 399 F.3d at 1082. In the present action, Plaintiff has alleged that all Defendants are the administrators of the plans; and Defendants have not suggested anything to the contrary. Everhart and Ford are, therefore, not controlling. In fact, absent any definitive identification of the plan administrator, courts have rejected formalistic approaches in favor of evaluating the function of the parties in question. *See, e.g.,* Penrose v. Hartford Life & Accident Ins. Co., 2003 U.S. Dist. LEXIS 13497 (N.D. Ill., August 4, 2003) (noting that the "provisions of the plan at issue" is a significant consideration in limitations on which parties may be sued).

### C. Plaintiff's Claim Meets The *Twombly* Standard.

Defendants next claim that Plaintiff has made "generalized allegations against Moving Defendants, who have no connection with plaintiff's particular circumstances." They reach the conclusion that because the Defendants "have no connection with plaintiff's particular circumstances," Plaintiff's allegations are necessarily "conclusory." In offering tenuous support for this assertion, Defendants point to the recent U.S. Supreme Court opinion in Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1995 (2007), which held that "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965.

Defendants make their argument by mischaracterizing the gravamen of Plaintiff's Complaint, stating that "plaintiff alleges that '[t]his litigation involves defendants' nearly categorical decision to refuse coverage for [RFA]…" In fact, the Complaint was quite direct in its allegations. Plaintiff's Complaint alleged that "every other defendant has prospectively declined approval for coverage of RFA…, or has denied coverage under its Blue Cross Plan for the expense of RFA…, or has declared publicly that it will not pay for RFA under its Blue Cross Plan…" Defendants may choose to argue that they did not act as alleged by Plaintiff, but Plaintiff's allegations themselves are sufficient to "raise a right to relief above the speculative level."

Defendants tout McHenry v. Renne, 84 F.3d 1172 (9th Cir. Cal. 1996) and Gen-Probe, Inc. v. Amoco Corp., 926 F. Supp. 948, 960-961 (S.D. Cal. 1996), as "requiring a complaint that 'states clearly how each and every defendant was alleged to have violated plaintiff's legal rights.'" Yet McHenry is easily distinguishable from the present action, as the plaintiffs in McHenry alleged numerous types of wrongful acts, without attempting to specify which of the defendants were liable for which of the various types of acts. In contrast, the wrongful acts allegedly engaged in by Defendants is straightforward – the retrospective and/or prospective denial of coverage for RFA treatment.

///

///

### D. If The Court Is Inclined To Grant The Crowell Group's Motion, Plaintiff Should Be Permitted Discovery And Leave To Amend.

Although Plaintiff is confident that standing under Article III and ERISA exists in this case, Plaintiff is mindful that this is a complex issue. Indeed, in a recent article in the California Law Review concerning standing issues in multi-defendant common practice litigation, the authors concluded as follows:

> The multi-defendant common practice lawsuit is a fairly rare phenomenon in contemporary litigation, perhaps because of the seeming rigidity of the injury-in-fact test and its application to some common practice suits. Nonetheless, as a mode of litigation, it offers significant advantages for the efficacious enforcement of various regulatory regimes. The case law dealing with multi-defendant lawsuits, with respect to both standing and class certification issues, is scattered, confused, and in much need of higher court guidance. . . . .

*How Many Injuries Does It Take? Article III Standing in the Class Action Context,* 95 Calif. L. Rev. 849, 883 (2007).

Given the degree to which courts have struggled with Article III standing issues and the interrelationship with class certification issues under Rule 23 of the Federal Rules of Civil Procedure, Plaintiff respectfully submits that the parties should engage in a narrow scope of discovery to isolate and clarify the facts pertinent to these difficult legal issues. Oppenheimer Fund v. Sanders, 437 U.S. 340, 351 (1978) [Rule 26 is sufficiently broad to permit discovery of facts related to preliminary jurisdictional matters]. The specific factual issues on which Plaintiff believes discovery is appropriate at this time are (1) whether Defendants have declined claims of persons capable of serving as named plaintiffs, such that the Article III standing issue would become moot; and (2) the degree to which the Defendant plans have centralized management of claims policies and decisions, such that standing should be analyzed under the Payton and Fallick line of cases.

Plaintiff has proposed and hereby requests that this Court order – if it intends to grant Defendants' motion to dismiss – a very narrow scope of discovery to ascertain the factual underpinnings of the issues raised by Defendants in their motion to dismiss. The preliminary

75648v2

8    4:08-cv-02753 CW
**OPPOSITION TO MOTION OF CROWELL GROUP DEFENDANTS TO DISMISS PLAINTIFF'S COMPLAINT**

discovery plan proposed by Plaintiff is as follows:

1) Each defendant would perform searches of its respective claims database for claims submitted under CPT Code 32998 (specific to RFA treatment of pulmonary tumors) or CPT Code 32999 (unlisted procedure lungs and pleura) for the past five years. Defendants would be dismissed if they certified pursuant to this process that they cover RFA treatment for pulmonary tumors *and* had not in the past 5 years declined any claims for such treatment on the grounds that such treatment was experimental, investigational or not medically necessary. . . . .

2) Defendants that had declined coverage for RFA treatment of pulmonary tumors on grounds that such treatment was investigational, experimental or not medically necessary would contact -- under court supervision, pursuant to a notice letter agreed upon by the parties -- all claimants whose claims had been declined. The notice letter would advise the claimants of this litigation, their potential right to serve as named plaintiffs, and provide contact information for plaintiffs counsel. . . . . Any such claimants who wished to serve as named plaintiffs in this litigation could contact plaintiffs counsel to be potentially added as named plaintiffs. . . . . At the end of the [105 day to 150 day notice] period, any defendants for which there was no named plaintiff would be dismissed and the litigation would proceed with respect to the remaining defendants.

3) Defendants would provide information about their specific status as claims administrators and the degree to which policy decisions between and among the Blue Cross plans are centralized.

## IV. CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that this Court deny the Crowell Group Defendants' Motion to Dismiss Plaintiff's Complaint.

///

Dated: September 4, 2008

Respectfully submitted,

WOOD & BENDER LLP

/s/ David E. Wood
By_____
   DAVID E. WOOD
   JEFFREY A. KIBURTZ
Attorneys for Plaintiff **JAMES M. CADY**
On Behalf Of Himself And All Others
Similarly Situated