**EDWARD J. NEVIN, State Bar No. 41226**
**NEVIN & ABSOLOM**
22 Battery Street, Suite 333
San Francisco, California 94111
Tel:  (415) 392-5040
Fax:  (415) 392-3729
E-Mail: ed.nevin@333law.com

**DAVID E. WOOD, State Bar No. 121170**
**JEFFREY A. KIBURTZ, State Bar No. 228127**
**WOOD & BENDER LLP**
864 E. Santa Clara Street
San Buenaventura, California 93001
Tel:  (805) 288-1300
Fax:  (805) 288-1301
E-Mail: dew@wood-bender.com
         jak@wood-bender.com

Attorneys for Plaintiff **JAMES M. CADY**
On Behalf Of Himself And All Others
Similarly Situated

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES M. CADY, an Individual, on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY, et al.,<br><br>Defendants. | Case No.: 4:08-CV-02753-CW<br><br>DATE: September 25, 2008<br>TIME: 2:00 p.m.<br>DEPT.: Courtroom 2, 4th Floor<br>JUDGE: Honorable Claudia Wilken<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION, FAILURE TO STATE A CLAIM AND FOR MORE DEFINITE STATEMENT**<br>*[FOLEY GROUP]* |

75652v3

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO FOLEY GROUP DEFENDANTS' MOTION TO DISMISS COMPLAINT

## I. INTRODUCTION

This is a multi-defendant common practice lawsuit involving the uniform practice of 39 Blue Cross & Blue Shield health insurers to decline coverage for a treatment of certain pulmonary tumors called Radiofrequency Ablation ("RFA"). RFA is a non-invasive treatment performed on an out-patient basis that is covered under most health insurance policies (including some Blue Cross plans, which were either not sued or have already been dismissed from this litigation). Mr. Cady seeks relief under ERISA for himself and similarly situated members of Blue Cross plans whose claims for RFA treatment have been wrongly denied.

Multiple Defendants[1] (hereinafter referred to as "Foley Group") filed a motion to dismiss, asserting that the case cannot proceed. As discussed below, the Foley Group's motion should be denied because (1) Defendants disregard established law providing that a plaintiff (such as Plaintiff here) can sue multiple health insurance plans under the Employment Retirement Income Security Act of 1974 ("ERISA") when the "gravamen of the plaintiff's challenge is to the general practices which affect all of the plans."; and (2) Defendants elevate

---

1// ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY, PREMERA BLUE CROSS, BLUE CROSS AND BLUE SHIELD OF ALABAMA, ARKANSAS BLUE CROSS AND BLUE SHIELD, BLUE SHIELD OF CALIFORNIA, ANTHEM BLUE CROSS AND BLUE SHIELD, CAREFIRST BLUECROSS BLUESHIELD, BLUE CROSS BLUE SHIELD OF DELAWARE, BLUE CROSS AND BLUE SHIELD OF FLORIDA, INC., BLUE CROSS AND BLUE SHIELD OF GEORGIA, INC., HAWAII MEDICAL SERVICE ASSOCIATION, WELLMARK BLUECROSS BLUESHIELD OF IOWA, REGENCE BLUESHIELD OF IDAHO, INC., THE REGENCE GROUP, BLUECROSS AND BLUESHIELD OF LOUISIANA, BLUECROSS AND BLUESHIELD OF MASSACHUSETTS, INC., BLUE CROSS BLUE SHIELD OF MICHIGAN, BLUE CROSS BLUE SHIELD OF MINNESOTA, BLUE CROSS AND BLUE SHIELD OF KANSAS, INC., BLUE CROSS AND BLUE SHIELD OF MISSISSIPPI, BLUE CROSS AND BLUE SHIELD OF MONTANA, INC., BLUE CROSS AND BLUE SHIELD OF NORTH CAROLINA, EMPIRE BLUECROSS BLUESHIELD, EXCELLUS, INC., CAPITAL BLUE CROSS, HIGHMARK, INC., BLUE CROSS AND BLUE SHIELD OF RHODE ISLAND, BLUE CROSS AND BLUE SHIELD OF SOUTH CAROLINA, BLUECROSS BLUESHIELD OF TENNESSEE, INC., BLUECROSS BLUESHIELD OF VERMONT, and MOUNTAIN STATE BLUE CROSS BLUE SHIELD.

form over substance by disregarding the plain allegations that Plaintiff contends that all defendants wrongfully decline claims for RFA treatment of specific types of pulmonary tumors, instead averring that Plaintiff's allegations are insufficient to place Defendants on notice of what they did wrong.

Plaintiff is a member of a plan administered by ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY ("California Plan"), but not plans administered by the other Defendants. The Foley Group argues that the all Defendants except the California Plan should be dismissed because Plaintiff lacks standing under Article III of the United States Constitution and ERISA to sue plans of which he was not a member. Defendants, in making this argument, fail to address, discuss or – much less – distinguish the large body of law that permits plaintiffs under ERISA to sue plans other than their own when the "gravamen of the plaintiff's challenge is to the general practices which affect all of the plans."[2]

The Foley Group defendants also argue that all Defendants should be dismissed because Plaintiff alleged only that the Defendants "administered" the plans, not that Defendants are the "administrators" of the plans. The distinction the Foley Group intends to make here is neither supported in the case law nor relevant to the issues before the court. The Foley Group also argues that all Defendants should be dismissed because the class claims are too general with respect to all Defendants to meet general pleading standards and class certification standards of Rule 23 of the Federal Rules of Civil Procedure ("FRCP"). Not only does this directly contradict the Foley Group's argument that Article III standing issues should be decidedly independently of, and not in conjunction with, class certification issues under Rule 23 of the FRCP, it disregards the nature of Plaintiff's allegations that *all* Defendants wrongfully decline coverage for RFA treatment of certain types of pulmonary tumors. Defendants' averred ignorance concerning what, specifically, Plaintiff contends they did wrong is pretextual in nature, and intended to avoid litigation on the merits.

---

2// Buus v. WaMu Pension Plan, 2007 U.S.Dist.LEXIS 95729, * (W.D. Wash., December 18, 2007) *quoting* Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 422 (6th Cir. 1998) *see also* Davis v. Bailey, 2005 U.S.Dist.LEXIS 38204, *6-7 (D. Colo., December 22, 2005); Alves v. Harvard Pilgrim Health Care, Inc., 204 F.Supp.2d 198, 205 (D. Mass. 2002).

## II. FACTUAL BACKGROUND

Plaintiff has brought this putative class action against Defendants to seek relief for the declination of coverage for RFA for certain types of pulmonary cancers in patients for whom surgery is not a viable option. Plaintiff alleges that all Defendants, per the terms of the plans they administer, generally agree to cover the cost of pulmonary cancer treatment, but exclude from coverage "[s]ervices or supplies that are not medically necessary, as defined." Complaint ¶51. Notwithstanding this agreement to cover the cost of pulmonary cancer treatment, all Defendants refuse to cover RFA therapy for sarcoma metastic to the lung. Complaint ¶54.

RFA is a means of treating pulmonary cancer patients who are not surgical candidates due to the size or nature of their tumors. Complaint ¶55. The procedure is far less invasive than any conventional therapy for these cancers, including surgery, radiation therapy, and chemotherapy. Id. It is performed on an outpatient basis under general anesthesia or conscious sedation. Id. The energy at the needle tip causes ionic agitation and frictional heat in the surrounding tissue, which, when hot enough, leads to cell death and coagulation necrosis. Id. Most patients feel little or no pain during the procedure and go home the same day or the day after the procedures, usually with no pain or soreness. Id. Rather than pay for this, Defendants require their insureds to suffer the pain of pulmonary tumors or undergo expensive and invasive surgery (when that is even an option).

Defendants' medical policy with respect to RFA treatment of pulmonary tumors is that they will "not provide coverage for radiofrequency ablation of pulmonary tumors . . . [because RFA] is considered investigational." Complaint ¶56. In accordance with this medical policy, Plaintiff alleges that all Defendants decline coverage for RFA treatment of pulmonary tumors. Complaint ¶¶57-58. Defendants' action in this regard is inconsistent with the health insurance industry as a whole, as most major health insurers recognize as medically sound the use of RFA treatment for pulmonary tumors. Complaint ¶59.

///
///
///

**III.  ARGUMENT**

    **A.  Plaintiff Has Standing To Assert Claims Against Defendants Not In Privity With Him.**

        **1.  Article III Standing Exists With Respect To All Defendants.**

"Once a potential ERISA class representative establishes his individual standing to sue his own ERISA-governed plan, there is *no additional constitutional standing requirement* related to his suitability to represent the putative class of members of other plans to which he does not belong." Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 424 (6th Cir. 1998) (emphasis added). This is because the "standing-related provisions of ERISA were not intended to limit a claimant's right to proceed under *Rule 23* on behalf of all individuals affected by the challenged conduct, regardless of the representative's lack of participation in all the ERISA-governed plans involved." Id. at 423.[3] When a plaintiff has standing to sue his own ERISA-governed plan, he may "represent a class of participants in numerous plans other than his own, if the gravamen of the plaintiff's challenge is to the general practices which affect all of the plans." Buus v. WaMu Pension Plan, 2007 U.S.Dist.LEXIS 95729, * (W.D. Wash., December 18, 2007) *quoting* Fallick, *supra*, 162 F.3d at 422; *see also* Davis v. Bailey, 2005 U.S.Dist.LEXIS 38204, *6-7 (D. Colo., December 22, 2005); Alves v. Harvard Pilgrim Health Care, Inc., 204 F.Supp.2d 198, 205 (D. Mass. 2002).

Here, it is undisputed that Plaintiff has Article III standing to sue the California Plan. Therefore, by operation of the foregoing cases, Plaintiff has Article III standing to assert on behalf of a putative class claims against ***all*** Defendants.

In addition to the ERISA context, courts have concluded that multi-defendant common practice lawsuits are constitutionally permissible. Indeed, in a case cited by Defendants, In re Eaton Vance Corp. Secs. Litig., 220 F.R.D. 162, 168 (S.D.N.Y. 2004), the court found that there

---

[3] The Seventh Circuit court and two district courts have noted that ERISA does not require an "unduly cramped reading to those provisions granting standing to certain classes of persons under the Act." Sladek v. Bell System Management Pension Plan, 880 F.2d 927, 976 (7th Cir. 1989); In re Eaton Vance Corp. Secs. Litig., 220 F.R.D. 162, 168 (S.D.N.Y. 2004); John Doe I v. Guardian Life Ins. Co. of America, 145 F.R.D. 466, 472 (N.D. Ill. 1992).

"may well be instances when it is necessary to create exceptions to the general rule that Article III standing should be addressed before other issues." Id. at 168. These cases include ERISA cases (Fallick, *supra*, 162 F.3d at 422), civil rights litigation (Wilder v. Bernstein, 499 F.Supp. 980, 993 (S.D.N.Y. 1980)), asbestos cases (Ortiz v. Fibreboard Corp., 527 U.S. 815, 831 (1999)), and common practices engaged in by numerous, related defendants (Payton v. County of Kane, 308 F.3d 673, 680 (7th Cir. 2002)). In each, the court considered Article III standing issues in conjunction with, or in the context of, class certification issues under Rule 23 of the Federal Rules of Civil Procedure. For example, in Payton, *supra*, the Seventh Circuit Court of Appeals held as follows:

> We come therefore to the central issue in this case, which is whether these named plaintiffs may represent a class that includes people from the other 17 named counties. We have begun our analysis with the question of class certification, mindful of the Supreme Court's directive to consider issues of class certification prior to issues of standing. See Ortiz v. Fibreboard Corp., 527 U.S. 815, 831 (1999): "the class certification issues are . . . logically antecedent to Article III concerns, and themselves pertain to statutory standing, which may properly be treated before Article III standing. Thus the issue about Rule 23 certification should be treated first." Id. at 831. (citations omitted). This involves defining the class and assessing whether the proposed class representatives can satisfy all four requirements of Rule 23(a), and at least one of the categories of Rule 23(b). Because the district court never undertook this inquiry, it would be premature for this court to do so without a proper record.

Payton, *supra*, 308 F.3d at 680.

Defendants' argument that multi-defendant common practice cases such as this must always be dismissed is contrary to well-established law.

**2.     Standing Under ERISA Exists With Respect To All Defendants.**

Defendants also contend that Plaintiff does not have standing under ERISA to pursue claims against plans other than the California Plan. Specifically, Defendants argue that "an ERISA plaintiff cannot maintain an action against any plan under which he is neither a beneficiary nor participant and through which he has no fiduciary relationship." This is, as indicated above, in sharp contrast to ERISA law (which Defendants ignored in their moving papers). Indeed, the only case relied on by Defendants for this proposition, Curtis v. Nevada Bonding Corp., 53 F.3d 1023, 1026 (9th Cir. 1995), is inapposite. In Curtis, insurers sought to

1  move a state law claim into federal court under an ERISA preemption argument. Id. at 1024.

2  However, the insured in that case had never been a member of an employer's health plan such

3  that ERISA would apply. Id. On these facts, the court held that, when plaintiffs lack subject

4  matter jurisdiction in federal court, ERISA may not preempt their state law claims. Id. at 1026.

5  Curtis does not address the manner in which standing, or subject matter jurisdiction in general, is

6  reached.

7       Hastings v. Wilson, 2007 WL 333617 (D. Minn. 2007), *aff'd*, 516 F.3d 1055 (8th Cir.

8  2008), also cited by Defendants, is equally deficient in this objective. Hastings states that

9  "[o]nly a participant in, a fiduciary for, or a beneficiary of, an ERISA plan has standing to sue

10  under ERISA, and this Court has jurisdiction only over lawsuits brought by a member of one of

11  these groups." Id. Defendants do not dispute that Plaintiff was an insured or participant of the

12  plan issued by BC Life. The implication by Defendants that Hastings limits Plaintiff's standing

13  under ERISA to suits against BC Life alone stands in direct conflict with the holdings in Fallick

14  and Buus, which provide that a plaintiff may sue in regard to plans of which he is not a member.

15      **B.**    **Plaintiff's Claim Meets The *Everhart* Requirements Where Applicable.**

16       Defendants argue that Plaintiff's Complaint should be dismissed in its entirety because he

17  has failed to allege that any of the Defendants are "plan administrators." In support of their

18  argument, Defendants point to Everhart v. Allmerica Fin. Life Ins. Co., 275 F.3d 751 (9th Cir.

19  2001) and Ford v. MCI Communications Corporation Health & Welfare Plan, 3999 F.3d 1076,

20  1081 (9th Cir. 2005) to emphasize that "causes of action under section 1132(a)(1)(B) can only be

21  brought against the *plan* administrator, not the *claims* administrator." However, Plaintiff's

22  Complaint is not in conflict with this holding. In his Complaint, Plaintiff clearly states that

23  Anthem "insured *and* administered" the California Plan, while his employer merely "sponsored"

24  it. Because Anthem administers *both* the plan and claims made against it, Anthem is a "plan

25  administrator" under Everhart and Ford and consequently is an appropriate defendant in this

26  action. Plaintiff's allegations with respect to the other plans are similar, making those

27  Defendants appropriate Defendants as well.

28

75652v3                                  6                              4:08-cv-02753 CW
**OPPOSITION TO FOLEY GROUP DEFENDANTS' MOTION TO DISMISS COMPLAINT**

Defendants' use of <u>Everhart</u> and <u>Ford</u> in challenging Plaintiff's action against the remaining Defendants is equally inapposite. Both <u>Everhart</u> and <u>Ford</u> involve circumstances in which the identity of the plan administrator was either specified in the plan or conceded by the parties. As a result, by process of elimination the court could readily reject the contention that any other entities – including one which effectively administered the plan – could serve as the plan administrator. <u>Ford</u>, *supra*, 399 F.3d at 1082 (emphasis added). In the present action, Plaintiff has alleged that all Defendants are the administrators of the plans; and Defendants have not suggested anything to the contrary. <u>Everhart</u> and <u>Ford</u> are, therefore, not controlling. In fact, absent definitive identification or proof of some other party that is the "plan administrator," courts have rejected formalistic approaches in favor of evaluating the function of the parties in question. *See, e.g.,* <u>Penrose v. Hartford Life & Accident Ins. Co.</u>, 2003 U.S. Dist. LEXIS 13497 (N.D. Ill., August 4, 2003) (noting that the "provisions of the plan at issue" is a significant consideration in limitations on which parties may be sued).

**C.   Plaintiff's Claim Meets The *Twombly* Standard.**

Defendants next claim that Plaintiff has failed to allege facts concerning each defendant with sufficient specificity to state a claim. In support of this assertion, Defendants point to the recent U.S. Supreme Court opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1995 (2007), which held that "factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u> at 1965. Despite their ambitious efforts, Defendants can point to nothing in <u>Twombly</u> which suggests that a claim is "above the speculative level" only when some unspecified threshold of facts is alleged against each particular Defendant.

Defendants point to a series of cases which are distinguishable from the present action. For example, in both <u>McHenry v. Renne</u>, 84 F.3d 1172 (9th Cir. 1996) and <u>Gen-Probe, Inc. v. Amoco Corp.</u>, 926 F. Supp. 948, 960-961 (S.D. Cal. 1996), the plaintiffs alleged numerous types of wrongful acts, without attempting to specify which of the defendants were liable for which of the various types of acts. In <u>Nevis v. Wells Fargo Bank</u>, 2007 U.S. Dist. LEXIS 65932 (N.D. Cal. Sept. 6, 2007), the plaintiffs made brief references to the defendant in question that failed to allege any particular wrongdoing. In contrast to these cases, Plaintiff specifically alleges that

each of the Defendants is engaging, has engaged or will engage in a particular form of wrongdoing, namely declination of coverage for certain RFA treatment. Defendants' reliance on Gauvin v. Trombatore, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988), is particularly inapposite, as the plaintiff there had failed to meet the special statutory pleading requirements of 42 U.S.C. Sections 1981 and 1983, a statute not at issue in this action.

The only two cases cited by Defendants involving putative class actions are equally distinguishable. In Brennan v. Concord EFS, Inc., 369 F. Supp. 2d 1127, 1136 (N.D. Cal. 2005), the plaintiff was criticized by the court for having made "legal conclusions without supporting facts." Id. at 1136. In the present action, the allegation that each of the Defendants has or will deny certain RFA treatments is one of fact, and not a mere legal conclusion. In In re Providian Fin. Corp. Erisa Litig., 2002 U.S. Dist. LEXIS 25676 (N.D. Cal. Nov. 14, 2002), the court disapproved of a complaint which "lumped the various classes of defendants into an undifferentiated mass." Id. at *4. In the present action, there is one class of Defendants – those engaged in the denial of covered RFA treatment. Whether the denial is retrospective or prospective is immaterial for purposes of the Complaint.

Defendants then assert that Plaintiff "fail[ed] to inform each defendant what it allegedly did." In attempting to shoehorn the facts into their argument, Defendants incorrectly claim that the essence of Plaintiff's claim is that he "made a claim to each of the defendants that was rejected." Plaintiff has clearly stated in his Complaint that denials may have been both retrospective and prospective, and may have been directed at him, other prospective class members, or to the public at large. Plaintiff has alleged very specifically what Defendants have done wrong: Wrongfully declined coverage for RFA treatment of a specific type of pulmonary tumors. By averring ignorance as to the nature of Plaintiff's claims, Defendants are in effect asking that this Court decide the medical merits of this matter (which is inappropriate at the pleading stage).

///

///

///

**D.      If The Court Is Inclined To Grant The Foley Group's Motion, Plaintiff Should Be Permitted Discovery And Leave To Amend.**

Although Plaintiff is confident that standing under Article III and ERISA exists in this case, Plaintiff is mindful that this is a complex issue.  Indeed, in a recent article in the California Law Review concerning standing issues in multi-defendant common practice litigation, the authors concluded as follows:

> The multi-defendant common practice lawsuit is a fairly rare phenomenon in contemporary litigation, perhaps because of the seeming rigidity of the injury-in-fact test and its application to some common practice suits.  Nonetheless, as a mode of litigation, it offers significant advantages for the efficacious enforcement of various regulatory regimes.  The case law dealing with multi-defendant lawsuits, with respect to both standing and class certification issues, is scattered, confused, and in much need of higher court guidance. . . . .

*How Many Injuries Does It Take? Article III Standing in the Class Action Context,* 95 Calif. L. Rev. 849, 883 (2007).

Given the degree to which courts have struggled with Article III standing issues and the interrelationship with class certification issues under Rule 23 of the Federal Rules of Civil Procedure, Plaintiff respectfully submits that the parties should engage in a narrow scope of discovery to isolate and clarify the facts pertinent to these difficult legal issues.  Oppenheimer Fund v. Sanders, 437 U.S. 340, 351 (1978) [Rule 26 is sufficiently broad to permit discovery of facts related to preliminary jurisdictional matters].  The specific factual issues on which Plaintiff believes discovery is appropriate at this time are (1) whether Defendants have declined claims of persons capable of serving as named plaintiffs, such that the Article III standing issue would become moot; and (2) the degree to which the Defendant plans have centralized management of claims policies and decisions, such that standing should be analyzed under the Payton and Fallick line of cases.

Plaintiff has proposed and hereby requests that this Court order – if it intends to grant Defendants' motion to dismiss – a very narrow scope of discovery to ascertain the factual underpinnings of the issues raised by Defendants in their motion to dismiss.  The preliminary discovery plan proposed by Plaintiff is as follows:

1) Each defendant would perform searches of its respective claims database for claims submitted under CPT Code 32998 (specific to RFA treatment of pulmonary tumors) or CPT Code 32999 (unlisted procedure lungs and pleura) for the past five years. Defendants would be dismissed if they certified pursuant to this process that they cover RFA treatment for pulmonary tumors *and* had not in the past 5 years declined any claims for such treatment on the grounds that such treatment was experimental, investigational or not medically necessary. . . . .

2) Defendants that had declined coverage for RFA treatment of pulmonary tumors on grounds that such treatment was investigational, experimental or not medically necessary would contact -- under court supervision, pursuant to a notice letter agreed upon by the parties -- all claimants whose claims had been declined. The notice letter would advise the claimants of this litigation, their potential right to serve as named plaintiffs, and provide contact information for plaintiffs counsel. . . . . Any such claimants who wished to serve as named plaintiffs in this litigation could contact plaintiffs counsel to be potentially added as named plaintiffs. . . . . At the end of the [105 day to 150 day notice] period, any defendants for which there was no named plaintiff would be dismissed and the litigation would proceed with respect to the remaining defendants.

3) Defendants would provide information about their specific status as claims administrators and the degree to which policy decisions between and among the Blue Cross plans are centralized.

## IV.  CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss.

///

**Dated: September 4, 2008**                  Respectfully submitted,

                                                **WOOD & BENDER LLP**

                                                **/s/ David E. Wood**
By_____
         **DAVID E. WOOD**
         **JEFFREY A. KIBURTZ**
Attorneys for Plaintiff **JAMES M. CADY** On Behalf Of Himself And All Others Similarly Situated